The case is United States v. Renteria Good morning, your honors. May it please the court. My name is Susan Lin and I represent the appellant in this matter, Zenaido Renteria. Your honor, in this case... Would you like to... Ah, yes. Could I reserve... I know, you're ready to jump in and we're ready to hear you. But I do want three minutes for rebuttal, please. Three minutes, very well. Thank you. Mr. Renteria, in this case, was basically a delivery boy who participated in a drug conspiracy for a total of 24 hours, maybe even less, from June 3rd to June 4th of 2015. And Mr. Renteria's entire participation in this drug conspiracy took place in California, in the Central District of California. Additionally, during Mr. Renteria's 24-hour period of participation in this drug conspiracy, no other co-conspirator had any contact, committed any overt act, in the Eastern District of Pennsylvania. Under these circumstances, venue was not proper in the Eastern District. In this case, the statute, we have a statutory venue provision that says, venue for offense has begun in one district and completed in another may lie in any district where the offense has begun, continued, or completed. And we've got a conspiracy case. Your honor, I actually think that with a very plain reading of the text of that statute, we can conclude that Mr. Renteria's offense, it says the offense, Mr. Renteria's offense did not actually start until he had the conspiratorial agreement to join the conspiracy. It's plain from the elements in conspiracy that for an individual defendant to be culpable of conspiracy, there has to be that meeting of minds. And according to the evidence in this case, Mr. Renteria's... So we have to decide the conspiracy issue before we decide where the case should be brought? Actually, yes. I think that we need to, the government has to allege... In what jurisdiction would that then occur? You'd argue they didn't have venue once the decision was made? Well, so in this particular case, I think that the evidence is quite clear that Mr. Renteria didn't participate until June 3rd. But where that doesn't matter. It's any district where a co-conspirator has committed an act in furtherance of the conspiracy. Now, if you want to argue that he wasn't a member of the conspiracy, maybe that's later on if there were a finding to that effect. But for all intents and purposes, he's in it, 24 hours or no. Right, but the statute itself talks about what the offense, where the offense was begun... Conspiracy, which is a conspiracy. It's not a substantive crime, it's a conspiracy. Yes, and I submit that we need to look at what the defendant's offense is. And the defendant's offense started when he joined the conspiracy. But his offense was conspiracy? Yes. Once he joins, I mean, we have case law. Lester, those who come on later, you know, and cooperate, become parties and assume responsibility for all that's done. Lester's responsibility for those acts occurring prior to joining the conspiracy lays to rest the question of venue. We have case law since 1960. And yet none of those cases, Your Honor, I submit, deal with this factual scenario, this very unique factual scenario. This is not unique at all. Even I had cases like this in one of my former lives, where a person comes in, it's the last day, last 24 hours of the conspiracy, the jig is up, and that person is charged. And that person could be from wherever. He's charged, Your Honor, but I submit that when the venue, the venue issue is different here. This case was so attenuated from the Eastern District of Pennsylvania. No conspirator actually stepped foot here. And I'm not arguing that Juan or Sayhouse in this case didn't have contact with the Eastern District of Pennsylvania. They clearly did. But Mr. Renteria himself did not. And from the time he joined his conspiracy forward, there was no contact with the Eastern District of Pennsylvania. Your argument depends upon reading the statute that offense doesn't mean criminal offense, i.e. conspiracy. You would have to read it that his conduct, the conduct of the person. But this says offense, and it's a conspiracy offense, correct? It is a conspiracy offense, Your Honor, but I submit that offense means the defendant's offense. Conspiracy. That's what he was charged with. Yes. He stuck with that. If he was charged with distribution or sales or something, that would be different, would it not? We wouldn't be in 18 U.S.C. 3237. I think what we need to hear from you is what language can we look at in 3237 that takes conspiracy out of play here? Because when I see in any district in which such offense, the conspiracy, was begun, continued, or completed, I'm at a loss. Yes. Your Honor, I actually disagree that conspiracy in this case means a conspiracy that Mr. Renteria wasn't part of. I do think that we need to look at what Mr. Renteria participated in and the point at which he begun in the conspiracy offense. The court also should consider, though, that 3237A has to be read in conjunction with the Constitution, in conjunction with this court's holdings, that venue should be strictly interpreted. In this case, and the Second Circuit has followed this line of reasoning, the courts look at not only technically whether there's any contact at all with a proposed district or venue, but whether or not the defendant, there's some sense that the defendant chose that place, or whether or not the defendant could reasonably foresee. If you're relying on Royer and Davis, are you relying on Royer and Davis? Yes, Your Honor. Those cases involve the substantive counts of conviction. In Royer, the venue, as the Second Circuit discussed, venue as to the substantive counts of conviction, not conspiracy. It then turned to the conspiracy count and said, in a prosecution, venue is proper in any district in which an overact in furtherance of the conspiracy was committed. This includes not just acts by co-conspirators, but also acts they caused, blah, blah, blah, blah. So it distinguished the conspiracy count. And in Davis, on appeal, he only challenged venue as to the substantive counts of conviction. So those cases weren't within 3237A, were they not? Your Honor, my understanding is that there's an analysis in Davis. An analysis was done on 3237A, and the court discussed the strict language of 3237A. And then the court went on to talk about substantial contacts and also to discuss the reasonable foreseeability and the sense that a defendant has chosen the venue. But it did so, it says thus, it says, Davis contends district court erred in rejecting its venue challenge to the three substantive counts of conviction. Well, that's what the defendant was challenging. The court, in its opinion, discussed 3237A and proceeded with those three steps in its analysis of venue. Well, Davis isn't particularly helpful, right, because that's their substantial contacts, which it seems that they've abandoned, and they are now on foreseeability. And it seems that they've had some troubles in trial circuit because they seem to be criticizing the fact that they really haven't set forth any analysis on foreseeability. Let's see, Kirk Tang Yuk, which is a Second Circuit case this year, acknowledges that Svoboda, which is the key foreseeability case in the Second Circuit, is deficient in its discussion of foreseeability. So, you know, the Second Circuit seems to be out there, and the Second Circuit doesn't seem to have said much upon which we can rely. So, and, of course, the distinctions that Judge Rendell has just mentioned with regard to conspiracy. So, we're high pressed to follow the Second Circuit here. The court, so I would actually go back to just the plain definition of the offense in 3237A, which in this case, Mr. Renteria's entire actions took place from the point he joined the conspiracy, from the point he actually committed a criminal offense, which starts, according to the elements of conspiracy, of drug conspiracy, with the meeting of his minds, with the conspiratorial agreement. He didn't start until the day that that agent reached California. There is affirmative evidence in the record that he was not part of the conspiracy prior to that date, prior to June 3rd. There's affirmative evidence in the record that he did not find out about the job until June 3rd. There's affirmative evidence in the record that the only reason he was brought in by Sayhas or Kwan was because the undercover agent specifically requested an English-speaking mule, an English-speaking courier on June 1st, and prior to that, and in that conversation on June 1st, Sayhas said, well, I don't know if we're going to find one. We'll try, but if we can't, you know, you're stuck with the guy that you had before. There is a connection, though, between Renteria and the two other individuals who had shipped drugs to Pennsylvania, isn't there? There's no evidence. That would be Sayhas and Kwan, is that correct? Otherwise, how would Renteria know to me they are ready to show drugs to this agent coming from Pennsylvania? But there's no evidence of that connection prior to, in a drug conspiratorial sense, in a legal sense. There's no evidence of that connection. In a conspiratorial sense, Renteria knew to be there waiting for this guy from Pennsylvania. On June 3rd. Well, on June 3rd is the first contact, but there's no evidence. According to the agent himself at trial, there is no evidence of any illegal drug conspiratorial relationship between Renteria and Kwan and Sayhas prior to June 3rd. But what case law says that that matters? You know, and I submit that that is the definition of conspiracy. It's the definition of Mr. Renteria's offense, is that it starts when he joins the conspiracy, given that he was the only defendant on trial here. Well, wait. Those who come on later and cooperate in the same effort to obtain the unlawful results become parties thereto and assume responsibility for all done before. Except that our conspiratorial law also says, in terms of substantive liability, in terms of liability under sentencing guidelines, in terms of liability for drug mandos, that an individual is only responsible for the drug quantity, for the acts under Pinkerton. That's a sentencing issue. Under Pinkerton, it's also one is responsible for the acts of co-conspirators happening after one joins and is reasonably foreseeable to that individual. You challenged the jury instructions here, but didn't the jury instruction that your client proposed or counsel proposed here didn't have the bells and whistles that you're now saying it should have? Why? Didn't you waive any right to challenge the jury instruction that was given? Your Honor, I believe the government even conceded in a footnote that we have not waived that in light of the Well, they said in light of a motion to dismiss. Right. How do you preserve an objection to jury instructions by raising something in a motion? Because the motion to dismiss basically contained the same argument that we would have proposed in a jury instruction. But if you did propose it with respect to the jury instruction, how do you preserve it with respect to the jury instruction? I'm not following that. Because it would have been futile to make the argument, and so therefore it's not necessary, and the government concedes this in their footnote, in their response brief, that we have arguably preserved it anyway because we would have raised the same argument. Trial counsel did propose an instruction that did not include the added language that the government included in its proposed instruction when the district court rejected trial counsel's proposed instruction and adopted the government's proposed instruction. There was no need for the trial attorney to take an exception to the court's ruling at that point. Your argument still is on the proposition that Renteria was not involved in a conspiracy at all. This is a one-off situation when he met this agent from Pennsylvania? He was involved in a conspiracy as far as delivering drugs to that agent in Huntington Beach, California. And accepting the money for the prior, accepting $24,000, didn't he? Yes, that was part of the delivery of the drugs and the accepting of the money. And that was a conspiracy with Cejas and the other individual? But only in Huntington Beach. Okay, now I understand. Right, it's all in California. His agreement occurred in California. His actions occurred in California from the point on. But those two individuals had already sent a number of drugs, methamphetamine I believe, into Pennsylvania. Yes, they had. And Renteria then worked with those same two individuals to receive money for another package of drugs in California. Yes, Your Honor. But you say that's not the same conspiracy? His conspiracy... So there is a division between holding somebody responsible for acts that happened prior to when he actually joined... What if we conclude that it is the same conspiracy to distribute drugs in Pennsylvania? I would still argue that he could only be held liable for overacts that occurred after he joined the conspiracy. What's your case law authority for that proposition? Your Honor, I rely on the definition of what a conspiracy is and what a defendant is. I've just cited to you what Lester, I mean our case law going back decades, has something different. My time is up. Should I sit down? Yes, by all means. To be continued. Three minutes to come. Good morning, Your Honors. May it please the Court, Bernadette McKeown on behalf of the government in this case. I'd like to start by addressing what I see as a new argument that was raised for the first time in the appellant's reply brief, which is that he cannot be held responsible for any acts before he actually joined the conspiracy and that there's some sort of factual finding somewhere that he joined the conspiracy as of June 3rd. And I would dispute that on a number of grounds. First of all, there was nothing raised and no argument presented in the district court regarding when he joined the conspiracy. It was not argued to the jury. It was not raised in a Rule 29 motion in any fashion. It wasn't raised in the defendant's opening brief as a sufficiency challenge. Does attorney matter that much? Ultimately, it doesn't. And I will say why, because Judge Rendell has quoted at length from Lester. Lester itself takes that quote from a 1934 decision in Lefkoe. You are responsible for all of the acts committed by your co-conspirators when you join a conspiracy, all the acts that predate the conspiracy. It's hornbook law. Second, there are numerous cases in other districts. Everyone's reached that conclusion. The confusion, I think, here is substantive acts. That's pinkerton. There must be reasonable foreseeability to hold a co-conspirator responsible for the substantive liability, but certainly not for the conspiracy itself. That's how you define the conspiracy. So you join an ongoing conspiracy, and you are responsible in the context of that conspiracy for the acts committed by your co-conspirators. And that is just the law. You're stuck with all the baggage. You get stuck with all the baggage. You get stuck with all the baggage. There are, of course, as counsel noted, when it comes to substantive liability or sentencing issues or even mandatory minimums, there are other avenues that that's addressed. But in terms of the scope of your responsibility and liability for that conspiracy, it could go back 10 years. You have now assumed that risk by joining. As long as it's the same conspiracy. This mostly arises in the context of situations where there's an argument that there's that old conspiracy, I joined a new conspiracy, single versus multiple conspiracies. That's simply not the case here. We can also vigorously dispute that we joined the conspiracy on June 3rd, but we don't need to really go into that. The facts show that he's a trusted courier, et cetera. But I think that's irrelevant to what's before this court. I still find it odd that he went from Pennsylvania to California, made a purchase there, and Venturino apparently has never been in California. Maybe he was. But the entire incident regarding this one individual took place in California. And now he has to go all the way to Pennsylvania. He's going to be tried by himself. Maybe he has witnesses in California for the case to be prosecuted there. I see an inherent unfairness. Could you speak to that? Yes, Your Honor. Constitutionally, it is not unfair. The real way to address your concern was through a Rule 21 motion for a transfer, which was done in this case. And the defendant gave absolutely no reasons why the case should be transferred. So there is a mechanism for addressing what you see as an unfairness, but this is not a constitutionally unfair venue for this defendant. And that's been recognized as far back as the Hyde case in 1912. The Supreme Court, in a very lengthy opinion, most of which had to do with withdrawal, talked at length about conspiracy and how when you are a conspirator, those overt acts, you're responsible for those overt acts. So you're saying the Constitution would only be implicated if he did show hardship or some basis that he was being denied due process by having to try the case in Pennsylvania? Well, I think once the venue provision is satisfied, that's the test that the Second Circuit added, that substantial context test in the context of hardship. Let's go back and look at it more closely. I'm saying when you are a conspirator and you join an ongoing conspiracy and your conspirators committed overt acts in another district, you can be held responsible for trial there. And that really does go back to Hyde. It's followed through by the Supreme Court. It's followed through in Ornheimer. In this case, in this circuit, Perez and Ornheimer both recognized that Pennsylvania. The contact in Pennsylvania was just the agent calling and saying, I'll be there to pick up the drugs? No, there was a – and actually the indictment itself charged that he was a member of this conspiracy from May 2015 until June 4th, the events of June 4th. There had been a previous drug transaction. He was picking up the money for the previous drug transaction. That was one of the things he had agreed to do, $28,000 plus another $130,000. This man was entrusted with or tasked with collecting $146,000 for the other conspirators. So you're saying the proper remedy is a motion to transfer venue? Well, that was a – and he did move to transfer venue, did not supply adequate information, and that is actually conceded on appeal, that there was no basis to – did not address the Platt factors. But if I could get to the foreseeability issue, because that's really what this is about. I have a question on that. So the government argued in Ornheimer, which I presume that's how you pronounce it, that we adopted the substantial context test, which we said is far from clear. I wondered if you still had that position that that case stands for the proposition that this court has adopted the substantial context test? No, I think Ornheimer made it perfectly clear that – Yes, you made it perfectly clear. No, and we accept that because the substantial context test in New York, as you noted, Your Honor, the Second Circuits were treated from that test. They adopted that test in 1985 in the Reed case, and that was the genesis of this, you have to have freely selected. Then it was applied, and the Savita case and the – there were securities fraud cases, a number of them, where they eventually – the most important of the securities fraud cases, of the non-conspiracy case, was a 2003 case named Savita. And in that case, the Second Circuit re-embraced the principle that it's fair to try a co-conspirator where there are conspirators committed over debts. And that was in the context of a RICO conspiracy. And then they adopted a foreseeability requirement in securities fraud cases. I will note that the court did – the Second Circuit did apply a foreseeability analysis in a drug conspiracy case for the first time in 2007. It's the Romney case. And in that – but when you look at that, as Your Honor noted, there's no principled reason for what they did there. What happened was the defendant, who's in the Netherlands, gets a phone call from New York. He's importing ecstasy to the United States. He argues, well, I didn't know those phone calls came from New York, so venue's not proper. Court said, oh, you don't have to know. But then it went further and said, at best, you just have to know that it's not foreseeable. And they went on to say, even if that's the test, it's not foreseeable here. For some reason, subsequent Second Circuit cases decided that foreseeability was a requirement of venue as to co-conspirator acts. There was never an explanation for it. And the Yupp case in 2018 even notes that. The other circuits that have actually considered that issue, they haven't said much either because they just said, there's just no basis in the Constitution, nor is it supported by conspiracy, general conspiracy principles. And they said, we're not going to import or impose a foreseeability requirement with respect to co-conspirator acts. Counsel said she was relying on Royer and Davis, and I drew what I thought was a distinction there. Do you agree that they were not conspiracy, they didn't apply foreseeability to conspiracy? Yes, I do agree, and particularly in Davis, the 2012 case, they only analyzed whether the Hobbs Act robbery, whether there was, and there they decided because the effect was, what they were relying on for venue was the effect on interstate commerce. They said it has to be foreseeable to that defendant that it would have an effect on interstate commerce in the southern district rather than the eastern district where most of the activity took place. So in that case, whether or not that's correct does not matter here because we are looking at whether it has to be foreseeable that your co-conspirators committed overdose in this district. And I suggest that would be an absurd result in drug cases because you then would have to prove that each individual knew not only that overdoses were being committed. General conspiracy law, you do not have to know even the entire goal. You don't have to know the other participants. You don't have to know all the actions that are being taken. It's the unity of purpose to accomplish an unlawful goal and an agreement to do that. And once you join that, you're stuck. And it was Hobbs Act, not conspiracy. Yes, it was Hobbs Act substantive. The defense contends the district court erred in rejecting its venue challenge to the three substantive counts of convictions. Right, and that's why we are not here to address whether or not the Second Circuit was wrong in sometimes imposing a foreseeability requirement to an individual's conduct on an individual's substantive count. That's just not before this court. What's before this court is whether foreseeability should be a requirement when we are analyzing whether a defendant can be held responsible for the acts of his co-conspirators in a particular district. That actually sounds like a subjective test. In other words, I could not have foreseen that my conduct would result in harm in another state. And that's why it's also a fact question. This was not presented to the jury in any fashion. The closing argument didn't say I wasn't a member of the conspiracy before then. It said there's not enough evidence to hold me responsible for the conspiracy. And it also wasn't raised as a sufficiency challenge. So the bottom line is that the Second Circuit's foreseeability test is not well-reasoned. It is not mandated by either constitutional principles or by conspiracy law. And it actually conflicts with general conspiracy law. And I think that this circuit has gotten right in Peres and in Orenheimer. I thought Orenheimer was interesting where even though they found there were First, they found there was no essential conduct elements for the substantive count. But on the conspiracy count, they said no overt acts were committed in this district. And they said if there had been an overt act committed by the defendant or by a co-conspirator, they couldn't complain about being hauled into court in this district. And that's a direct quote from Orenheimer. That's the correct... So they said there had to be some act because under the statute, it had to be where it was begun or continued or ended. And there, there was actually no act. That's correct, Your Honor. And it really does. I mean, there was some argument presented in the briefing about when an overt act is not required in order to prove the conspiracy. In that instance, Venue does impose an additional requirement to the extent that some act further into that conspiracy has to be committed in a district to give you Venue if it's not the district where you formed the legal agreement. So, yes, Venue does require that some act be performed. And what was the act here? The act here in the Eastern District, and I don't believe it's contested, there were the phone calls to and from the agent. There was also a shipment of drugs. His co-conspirators sent two kilos of methamphetamine into this district. They also then gave him a bank account in which the undercover agent then deposited money that was ostensibly going back to them. So there were definitely, and the overt acts, there's no dispute that those are overt acts. Not with Renteria, but with other members of the. Yes, with his co-conspirators. That's correct. And he was convicted of this conspiracy. The jury even had a copy of the indictment. Do you have any further questions? No, look, you brought it on in time. Thank you, Your Honor. Thank you. And let's hear from counsel on rebuttal. So just to emphasize, it is clear that Mr. Renteria himself never did call the agent in the Eastern District of Pennsylvania. He never did send drugs to the Eastern District of Pennsylvania. There is no evidence that he was actually involved in the conspiracy in the Eastern District of Pennsylvania. His actions all took place in California. Is there any finding anywhere as to exactly when he did join? There's no finding, but that is the burden of the government to show. It's the government's burden to show that he joined the conspiracy, and shift the burden of proof to show us, for us, the defense, to affirmatively show when that joining was. Well, he did join. He did join. It's clear from his comment. We're not contesting that he did. But what did be your burden to say, oh, yes, but he didn't join until then? Wouldn't that be your burden? I don't think so, Your Honor, because it's part of the element. One of the elements is the fact that he reached this agreement. If he did not fulfill that element. But, Bonnie, can't we infer, is it implicit from his act, his conduct, that he reached the agreement to be part of this conspiracy? He took the money. He delivered drugs. We can infer that he reached the agreement. There's no inference that can be made as to when he reached that agreement. Right, but my point is the burden then shifts back to you to say, oh, but he didn't join it until X date. I don't actually agree. I think the burden is still on the government to show that there is venue. If I could address the sentencing argument. Your Honor, at sentencing, the district court included in relevant conduct the amount of the drugs that were shipped to Pennsylvania on May 29th. Once again, I would submit that the evidence at trial indicated that Mr. Renteria did not join the conspiracy until June 3rd, that he was not part of the conspiracy on May 29th. So does this argument mean that every time someone joins a conspiracy after X date, that all of the weight, whatever drug is relevant, all the weight prior to that date should not be ascribed to the defendant being sentenced? Yes, it's actually in the application notes of the guidelines. The application notes specifically put forward that for jointly undertaken activity that a descendant is responsible for relevant conduct versus an offense level calculation purposes for what is reasonably foreseeable to him after he joins the conspiracy or the jointly undertaken activity. And it specifically says that he is not responsible for the weight that happened beforehand, the conduct that happened beforehand, even if he knows about it. That language, that even if he knows about it, even if he's aware of it, is in the application notes of the guidelines. So, Your Honor, I would submit that because Mr. Renteria did not join until June 3rd, that he should not be held responsible for offense level calculation purposes. This was in your reply brief? Your Honor, but she didn't argue it in the beginning argument, and Ms. McKeown, we didn't have an opportunity to address this argument. That is true. I did not get to the sentencing in the beginning. May I continue, or would you like me to? If you'll continue, we'll give Ms. McKeown a minute to respond. Yes, Your Honor. Because of the plain language of the application notes to the guidelines, and because I submit that there was no evidence that Mr. Renteria was part of the conspiracy or the jointly undertaken activity on May 29th, the district court erred in including the May 29th delivery in the calculation of Mr. Renteria's offense level. I know that the government in its brief has argued that it's not jointly undertaken activity, that this was activity that Mr. Renteria committed himself. In doing so, the government, I believe, is relying on the language of the guidelines 1B1.3. I think it is A1A. But if we look at that language in particular, that provision of the guidelines says that a defendant is responsible for acts and omissions committed. Mr. Renteria did not actually deliver the drugs on May 29th. There's no evidence of that. Aided or abetted. Mr. Renteria did not aid or abet that. He collected the money. Isn't that probative? I do think that there is a second circuit case, Hamilton, that basically says one cannot aid and abet an offense that has already been completed. The delivery of the drugs, that was the completion of the offense. So accepting the money is not aiding and abetting in the condition of the offense? Not after the effect. Not after the fact. Not after the delivery of it himself. For purposes of guidelines, it would basically be the equivalent of saying that somebody who joins the guidelines, sorry, a conspiracy, a month after a delivery has happened, and say that person is hired as a bookkeeper, somebody who's just trying to keep track of everything, that this conspiracy has sold back and forth throughout the prior month, that that person is then responsible for the weight that was delivered a month before. Now this is plain error standard, is it not? There was no objection to sentencing. There was no objection to sentencing. It is plain error. I submit that it satisfies plain error because the district court's actions in adopting that weight for purposes of guideline calculations is contrary to that. Well, wouldn't he have to make the argument that, oh, gee, by accepting the money, I mean, wouldn't that have to have been litigated before the district court that he's contending that when he accepted the payment, he really wasn't aiding and abetting the sale? I don't know. You know, I actually think that it's... I mean, if I were a district court judge, I wouldn't realize that that was wrong and that there was an issue if it hadn't been raised. So I don't think I would have plainly erred. I think that the language of the application notes covers this clearly, and therefore it is clear error. Any other questions? No. Thank you. Thank you. I will be brief on this point. In our brief, we did say that he was responsible for this because he agreed, as part of his agreement, the conspiratorial agreement, to collect drug proceeds from a prior drug transaction. This isn't a reasonable foreseeability issue. This is a knowledge issue. He's collecting money on behalf that is aiding and abetting. It is certainly an act unto itself, the commission of an act. Regardless of whether it fits into that criteria, it also satisfies the criteria of 1B1.1B in the case of jointly undertaking criminal activity. It's within the scope of the jointly undertaking criminal activity. Pick up those drug proceeds for you from the last deal. It's in furtherance of that activity. And the hook, what counsel gets hung up on, is reasonable foreseeable. Well, if you're collecting drug proceeds, it doesn't have to be reasonably foreseeable prospectively. It has to be, it was not only foreseeable, it was known that there was a prior delivery. Under any circumstances, the judge said, whether using either one of the 1B1.3 provisions, even subsection 2, solely with respect to offenses of a character for which grouping would be required, grouping would be required, also responsible for those acts. So I think no matter which analysis you apply, the judge got it right, and there certainly was no point in error. Thank you.